# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**KOREY S. PERSINGER,**
**Claimant Below, Petitioner**

**FILED**

June 26, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 19-0387** (BOR Appeal No. 2053620)
(Claim No. 2016028251)

**PARKWAYS ECON DEVELOPMENT AND TOURISM AUTHORITY,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Korey S. Persinger, by Counsel Reginald D. Henry, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Parkways Econ Development and Tourism Authority, by Counsel Jillian L. Moore, filed a timely response.

The issues on appeal are an additional compensable condition and medical benefits. The claims administrator denied a request for a left knee arthroscopy with bone grafting of the tibial/femoral tunnels. On January 24, 2018, the claims administrator denied the addition of left knee anterior cruciate ligament rupture to the claim. The Office of Judges affirmed the decisions in its October 26, 2018, Order. The Order was affirmed by the Board of Review on March 22, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Persinger, a highway technician, injured his left knee in the course of his employment on May 4, 2016. The Employees' and Physicians' Report of Injury indicates Mr. Persinger was pressure washing underneath a bridge when he twisted his left knee on some rocks. The diagnosis was listed as left knee sprain. The claim was held compensable for left knee sprain on May 9, 2016.

1

A July 20, 2016, left knee MRI showed that Mr. Persinger had previously had an anterior cruciate ligament graft. The graft was discontinuous. The MRI also showed patellofemoral chondromalacia, posterior lateral femoral condyle with low grade chondromalacia, and questionable large plica with small suprapatellar effusion. Mr. Persinger was treated by Joe Pack, D.O., on September 20, 2016. Dr. Pack diagnosed left knee anterior cruciate ligament tear and referred Mr. Persinger to WVU Sports Medicine for consideration of anterior cruciate ligament reconstruction.

On February 28, 2017, Mr. Persinger sought treatment from E. Barry McDonough, M.D., with WVU Sports Medicine. Mr. Persinger reported that he previously sustained a left knee anterior cruciate ligament tear in a motor vehicle accident, for which he underwent surgery. He stated that he completely recovered with no residual problems and returned to full-duty work. On May 2, 2016, he was working when he twisted his knee on some rocks. Dr. McDonough noted that an MRI showed a recurrent anterior cruciate ligament tear. The assessments were left knee recurrent anterior cruciate ligament tear, and left knee medial collateral ligament sprain. On March 10, 2017, Dr. McDonough noted that Mr. Persinger's left knee CT scan showed widening of the tibial osseous tunnel, status post anterior cruciate ligament graft reconstruction. Dr. McDonough diagnosed status post recurrent anterior cruciate ligament tear of the left knee. He stated that Mr. Persinger would need a left knee arthroscopy with bone graft and then an anterior cruciate ligament reconstruction.

Syam Stoll, M.D., performed a physician review on March 27, 2017, in which he recommended that Mr. Persinger get a second opinion with orthopedic surgery before the claims administrator considers whether to authorize a left knee arthroscopy. Dr. Stoll opined that the mechanism of injury, twisting, is not consistent with the MRI findings. Dr. Stoll stated that the MRI shows intact medial and lateral meniscus, which does not correlate with a twisting injury.

D. Kelly Agnew, M.D., performed an independent medical evaluation on June 21, 2018, in which he noted that the claim was held compensable for left knee strain. Mr. Persinger missed no work for his injury. Dr. Agnew noted that Mr. Persinger had a previous anterior cruciate ligament reconstruction. Dr. Agnew opined that his current need for surgery was the result of chronic failure, not an acute injury. He stated the findings seen on MRI had no causal relationship with the compensable injury. Dr. Agnew concluded that Mr. Persinger had reached maximum medical improvement. He assessed 0% impairment.

On July 13, 2017, Rebecca Thaxton, M.D., performed a physician review in which she recommended that the requested arthroscopy with anterior cruciate ligament reconstruction be denied. She noted Dr. Agnew's findings and determined that Mr. Persinger's anterior cruciate ligament tear was the result of chronic failure of the anterior cruciate ligament graft, not the compensable injury. Dr. Thaxton agreed and opined that the surgery should not be authorized. The claims administrator denied the request for a left knee arthroscopy with bone grafting of the tibial/femoral tunnels on September 20, 2017.

Dr. McDonough completed a diagnosis update in which he requested that anterior cruciate ligament rupture/tear be added to the claim on November 30, 2017. On December 11, 2017, Dr.

Thaxton performed a physician review in which she opined that anterior cruciate ligament rupture/tear should not be added to the claim. The claims administrator denied the addition of anterior cruciate ligament rupture to the claim on January 24, 2018.

In a June 12, 2018, independent medical evaluation, David Jenkinson, M.D., determined that Mr. Persinger's current symptoms are not consistent with a traumatic tear of the anterior cruciate ligament. He further opined that while Mr. Persinger may have suffered a strain of his left knee due to the compensable injury, he had chronic failure of his 2013 anterior cruciate ligament graft prior to the compensable injury. Dr. Jenkinson stated that Mr. Persinger had reached maximum medical improvement and opined that he had 0% permanent impairment as a result of the compensable injury. Mr. Persinger further stated that the requested surgery should not be authorized since it was not related to the compensable injury.

In its October 26, 2018, Order, the Office of Judges affirmed the claims administrator's decisions denying the addition of left knee anterior cruciate ligament rupture to the claim and denying authorization of a left knee arthroscopy with bone grafting of the tibial/femoral tunnels. The Office of Judges first addressed the addition of left anterior cruciate ligament rupture to the claim. The Office of Judges found that Dr. Stoll performed a physician review report in which he was asked to determine if the requested surgery should be authorized. Dr. Stoll opined that the mechanism of injury was not consistent with an anterior cruciate ligament rupture/tear. The Office of Judges noted that Dr. Agnew performed an independent medical evaluation in which he determined that Mr. Persinger's compensable injury was not compatible with an anterior cruciate ligament rupture/tear. Dr. Agnew opined that the MRI and CT scan showed degenerative changes in the left knee. The Office of Judges also relied upon Dr. Thaxton's physician review in which she concluded that anterior cruciate ligament tear should not be added to the claim. Finally, the Office of Judges looked to the report of Dr. Jenkinson, who performed an independent medical evaluation. Dr. Jenkinson concluded that the anterior cruciate ligament tear should not be added to the claim. He opined that the medical records and mechanism of injury were not consistent with an acute ligament tear in the left knee. Dr. Jenkinson found that the anterior cruciate ligament tear was the result of chronic failure of Mr. Persinger's prior 2013 reconstruction. Based on the above reports, the Office of Judges determined that a preponderance of the evidence indicates anterior cruciate ligament should not be added to the claim.

Regarding the requested left knee arthroscopy with bone grafting, the Office of Judges relied on the reports of Drs. Agnew, Thaxton, and Jenkinson to concluded that the surgery should not be authorized. Dr. Agnew opined that the surgery was requested to treat noncompensable, preexisting conditions. He stated that the bone grafting was to treat chronic widening of the canals, which resulted from the 2013 surgery and that the anterior cruciate ligament that followed would also be unrelated to the compensable injury. In her physician review, Dr. Thaxton agreed with Dr. Agnew's conclusions. Lastly, the Office of Judges looked to the report of Dr. Jenkinson. He opined that Mr. Persinger sustained a left knee sprain as a result of the compensable injury, that he had reached maximum medical improvement, and that the requested surgery should not be authorized. Based on the above reports, the Office of Judges concluded that the requested surgery should not be authorized. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on March 22, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. A preponderance of the evidence indicates that Mr. Persinger sustained a left knee sprain/strain as a result of the compensable injury. The evidence further indicates that his recurrent anterior cruciate ligament tear is the result of a chronic process rather than an acute injury. Therefore, the addition of the condition to the claim was properly denied. Because the condition is not a compensable component of the claim, surgery for the anterior cruciate ligament rupture/tear was also properly denied.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 26, 2020**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING**:

Justice Margaret L. Workman

4